UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:09-CV-77-BO

| | |
|---|---|
| SHUNG-LUNG CHAO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) ORDER |
| | ) |
| INTERNATIONAL BUSINESS, | ) |
| MACHINES CORPORATION d/b/a | ) |
| IBM and DONNA HARDEE, | ) |
| | ) |
| Defendants. | ) |
| | ) |

This matter is before the Court on Defendants' Motion for Summary Judgment pursuant

to Federal Rule of Civil Procedure 56(c). For the reasons below, Defendants' Motion is

GRANTED.

## BACKGROUND

In December 2005, Defendant IBM hired Plaintiff to work at its Research Triangle Park

location as a Band 9 Senior Engineer in the Thermal Engineering Department. Plaintiff, whose

race is Asian, and whose national origin is Chinese Taiwan, was fifty-two years old at the time of

hire. IBM terminated Plaintiff, alleging performance deficiencies, on March 25, 2008. On April

21, 2008, Plaintiff filed a charge with the Equal Employment Opportunity Commission

("EEOC") alleging race, national origin, and age discrimination, as well as retaliation. The

EEOC issued Plaintiff a Right to Sue Letter on October 24, 2008.

On January 22, 2009, Plaintiff filed a Complaint in North Carolina state court alleging

discrimination, illegal termination, and retaliation pursuant to Title VII of the 1964 Civil Rights

Act; the Age Discrimination in Employment Act ("ADEA"); 42 U.S.C. § 1981; and N.C.G.S. § 143-422.2. Defendants removed the case to federal court in February 2009. The parties have completed discovery, and Defendants have moved for summary judgment on all claims.

## DISCUSSION

Summary judgment is proper only when, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Cox v. County of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001). An issue is genuine if a reasonable jury, based on the evidence, could find in favor of the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Cox*, 249 F.3d at 299.

The party moving for summary judgment always bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 322-23. Once a motion for summary judgment is properly made and supported, to survive a summary judgment motion, the plaintiff bears the burden of production of evidence that creates an issue of material fact on an element essential to his case and on which he will bear the burden of proof at trial. *See Id.*, at 322. A plaintiff "may not rest upon mere allegations or denials," but rather must demonstrate that a triable issue of material fact exists. *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).

### Illegal Termination Claims

To establish a *prima facie* case of discrimination, the plaintiff must show that: (1) he is a member of a protected class; (2) he suffered an adverse employment decision; (3) his job performance was satisfactory; and (4) the position was filled by a similarly qualified applicant outside the protected class, or not filled at all. *Love-Lane v. Martin*, 355 F.3d 766, 787 (4th Cir.

2

2004). The Fourth Circuit has applied the same standards for Title VII discrimination cases when deciding employment discrimination claims under the ADEA and § 1981. *See Mallory v. Booth Refrigeration Supply Co.*, 882 F.2d 908, 910 (4th Cir. 1989); *Lovelace v. Sherwin-Williams Co.*, 681 F.2d 230, 239 (4th Cir. 982).

In this case, the parties do not dispute Plaintiff was a member of a protected class; that he suffered an adverse employment decision, or that the position was filled by an applicant outside the protected class, or not at all. The dispute is whether Plaintiff has made a *prima facie* case that his job performance was satisfactory. Plaintiff has failed to present any evidence of discrimination, or evidence other than his own personal opinion that his job performance was satisfactory.

Where a plaintiff offers no direct evidence to support his claims, the burden-shifting analysis formulated in *McDonnell Douglas Corp. v. Green* is applied. 411 U.S. 792, 802-04 (1973). Under the *McDonnell Douglas* test, if the plaintiff establishes a *prima facie* case, he raises a presumption of discrimination. However, once the employer offers a legitimate, nondiscriminatory reason for terminating the plaintiff, the presumption of discrimination drops from the case and the plaintiff bears the burden of demonstrating that the defendant's explanation is pretextual. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981). The *prima facie* case, when combined with a rejection of the defendant's proffered reason for termination, may permit the trier-of-fact to infer the ultimate fact of intentional discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

Defendants have put forward significant evidence to suggest that Plaintiff was fired for performance reasons, a legitimate, nondiscriminatory cause for termination. Plaintiff has not

3

provided any evidence, other than his own opinion and assertions, to contradict what is otherwise undisputed that those at IBM who evaluated or relied upon his job performance and work product, including his managers, human resources, a panel of Ph.D-level subject matter experts, and an independent investigator, did not believe Plaintiff was meeting the performance standards required for his position and senior pay grade.

Plaintiff asserts that he is Asian, his national origin is Chinese Taiwan, and he has worked for IMB for a little more than three years. During that time, there was only one other thermal engineer of Chinese national origin. Plaintiff alleges Defendant Hardee also fired him because of his race and national origin. However, Defendants' have asserted through depositions that it was actually the previous supervisor who advised Hardee of the previous employee's low performance and recommended Hardee immediately attend to the situation. Other than this conclusory allegation, Plaintiff has not put forth any evidence or information to suggest that he, or the previously terminated thermal engineer, were targeted for termination based on race or national origin.

From mid-2007 through his termination in March 2008, Plaintiff made a series of documented mistakes that caused his managers and internal customers to lose confidence in his work, and demonstrated to IBM management that Plaintiff was not performing at the level the company required. These errors included incorrectly reporting that the company's new BladeCenterH for Telco server could operate in an "enterprise environment." While the parties dispute the consequences of the error, the parties do not dispute this was an error. Plaintiff also erroneously reported that blowers from a new supplier outperformed the blowers IBM used at the time, prompting Defendant to make plans to begin using the new brand until Plaintiff's team

4

leader discovered the error. After these, and other errors, Plaintiff was instructed to run his findings past his team leader before distributing them. Plaintiff allegedly ignored this instruction and sent out additional incorrect data. Several team members and project managers spoke with Plaintiff's supervisor, and informed her that they did not trust his data or conclusions. Plaintiff does not allege that any of these IBM employees discriminated against him, only that his supervisor "had it out for him."

Plaintiff was given the lowest rating among all engineers within his grade on his end of 2007 year evaluation. D.E. # 27-87. The evaluation gave specific examples of Plaintiff's perceived shortcomings as an employee. These included "poor written and verbal communication which causes confusion with internal and external team members." *Id.* The evaluation specifically explained that Plaintiff often times "inflame[s]" his writing in an abrasive fashion when communicating with co-workers, that he has been asked to stop, and has failed to do so. *Id.* The evaluation identified and specifically explained three other areas where Plaintiff's performance needed to improve, including: (1) lack of technical understanding of his products; (2) inability to work independently on his products; and (3) lack of leadership on his products and within his thermal team. *Id.* Again, the evaluation addressed these issues with specificity. *Id.*

Approximately four weeks after this evaluation, Defendant Hardee again met with Plaintiff and informed him that his work remained unacceptable. Plaintiff was given the option of accepting a separation package or entering a Performance Improvement Plan ("PIP"), where Plaintiff would have thirty days to work on a project assigned to him and allow him to showcase his skills as a senior-level thermal engineer. Plaintiff declined the separation offer and entered

5

into the PIP. The PIP included weekly progress presentations. Because Hardee was not an expert in thermal engineering, Defendants selected three subject-matter experts to also evaluate Plaintiff's performance. Plaintiff does not allege that any of these experts were unequipped to evaluate his performance or discriminated against him. After reviewing Plaintiff's project each week and at the conclusion of his final project, the panel of experts unanimously agreed that Plaintiff failed to complete his project at the level expected of a senior thermal engineer. At this point, Plaintiff was terminated.

Plaintiff has failed to make a *prima facie* case that he was adequately able to perform his responsibilities as a senior thermal engineer. Further, Plaintiff is unable to rebut Defendants' legitimate, nondiscriminatory reason for termination that would permit the trier-of-fact to infer intentional discrimination. Accordingly, Defendants' Motion for Summary Judgment of Plaintiff's Title VII and § 1981 claims for illegal termination is GRANTED. Because Plaintiff's State illegal termination claims rest on the same set of facts, the Motion for Summary Judgment of this claim is also GRANTED.

### ADEA Claim

Plaintiff has not raised a single fact to show that Defendant IBM in any way discriminated against Plaintiff due to his age. In his Complaint, Plaintiff asserts he is over forty at the time his employment was terminated. Plaintiff also asserts his belief that IBM did not terminate any employee substantially younger than him who was under the same supervisor. This is the extent of Plaintiff's allegations. Plaintiff has not stated any material facts to establish a *prima facie* case of age discrimination. Simply being over forty and being the only one fired is not sufficient to establish a claim under the ADEA. As such, Defendant IBM's Motion for Summary Judgment

6

on this claim is GRANTED.

## Illegal Retaliation Claims

Under Title VII, retaliation against an employee is not permitted because the employee has opposed a practice that Title VII forbids. 42 U.S.C. § 2000e-3(a); *Burlington Northern and Santa Fe R.R. Co. v. White*, 548 U.S. 53, 62-3 (2006). To established a *prima facie* case of retaliation, the plaintiff must prove four elements: (1) he engaged in protected activity; (2) he suffered an adverse employment action; (3) the defendant was aware of his protected activity; and (4) a causal link exists between the protected activity and the adverse employment action. *Derby v. Winter*, 569 F.Supp.2d 558, 562 (E.D.N.C. 2008); *citing Haulbrook v. Michelin North America, Inc.*, 252 F.3d 696, 705-07 (4th Cir. 2001). A causal connection exists when the adverse employment action occurs shortly after learning of the protected activity. *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004).

Again, there is no question that Plaintiff suffered an adverse employment action. Plaintiff contends that he engaged in protected activity by complaining of "unfair treatment" after receiving his year-end performance evaluation on January 22, 2008. Specifically, Plaintiff wrote in the employee comments section of his evaluation, "I disagree with the overall assessment and rating given by my manager and believe I am the victim of unfair treatment." This statement, however, does not constitute "protected activity" sufficient to support a claim for unlawful retaliation under Title VII or 42 U.S.C. § 1981. *See Harris-Childs v. Medco Health Solutions of Tex. LLC*, 169 Fed. Appx. 913, 916 (5th Cir. March 13, 2006) (plaintiff could not show engagement in a protected activity, as her complaints of "unfair treatment" and harassment did not "put the employer on notice that her complaint was based on racial or sexual

7

discrimination").

Plaintiff did not engage in any protected activity until after IBM had already begun the process of termination. When discussing Plaintiff's year-end performance evaluation with him on January 22, 2008, Defendant Hardee offered Plaintiff a separation package and informed him that if his performance did not improve within 30 days, he would be placed on a PIP and terminated if he did not meet the performance expectations of the PIP. Plaintiff only raised the issue of discrimination nearly three weeks later, on February 14, 2008, when he submitted an internal appeal of his performance evaluation to IBM's corporate appeals office alleging, among other claims, that Hardee had discriminated against him because of his race and age.

The fact that Plaintiff was terminated after February 14, 2008, does not establish that his termination was retaliatory. *See Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006) ("We hold that, in a retaliation case, when an employer contemplates an adverse employment action before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation."). None of the testimony in the depositions contradict these facts and there is no evidence that Defendants took any detrimental action against Plaintiff in response to any of his complaints. Because Plaintiff cannot establish a causal connection between any protected activity and the decision to terminate his employment, his retaliation claim fails. Defendants' Motion for Summary Judgment on the Title VII and 42 U.S.C. § 1981 retaliation claims is GRANTED.

## CONCLUSION

Accordingly, Defendants' Motion for Summary Judgment is GRANTED.

SO ORDERED.

This __15__ day of June, 2010.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE